(68 App. Div. 592.)

### BROWN v. BARKER et al.

(Supreme Court, Appellate Division, Fourth Department. January 21, 1902.)

1. BANKRUPTCY—TRUST FOR SUPPORT—RIGHTS OF ASSIGNEE—CREDITORS.

　　Bankr. Act, § 70, subd. 5, enacts that property which, prior to the filing of a petition in bankruptcy, might have been levied on and sold under judicial process against the bankrupt, shall pass to the assignee. Real Property Law, §§ 80, 83, 83a, which apply to trusts of personalty as well as realty, declare, in substance, that the beneficiary of an express trust shall take no legal estate in the property, and that the beneficiary in a trust to receive rents and profits of real estate and apply them to the use of any one cannot dispose of his interest. Section 78 provides that where a trust is created to receive the rents and profits of real estate, and no valid direction for accumulation is given, the surplus of such rents and profits, beyond the sum necessary for the support of the beneficiary, shall be liable for the claims of creditors. *Held* that, while a trust for the support of one from the income of the trust fund cannot be broken up by a transfer or assignment, the surplus is liable, under section 78, to the demands of creditors, and, under Bankr. Act, § 70, such surplus, on an assignment by the beneficiary, passes to the assignee, and cannot be reached in an action by a creditor of the beneficiary.

2. SAME—CREDITORS—JUDGMENT—EXECUTION—RETURN UNSATISFIED.

　　The creditor of a beneficiary of a trust for support, and who had become a bankrupt, brought an action to reach the surplus income of the trust. The complaint alleged that plaintiff had commenced an action against the beneficiary, but that an order of a federal district court had restrained the proceedings until the determination of the question whether defendant should be discharged from his debts, which order was still in force. *Held*, that a demurrer, on the ground that the complaint did not show a judgment against the debtor and an execution re-

turned unsatisfied, or an adequate reason for such steps not having been taken, was good; the complaint not showing that the restraining order was entered without the consent of plaintiff, it not appearing that the federal court had any authority to enter such an order, or that plaintiff had endeavored to vacate the same.

Appeal from special term, Onondaga county.

Action by William M. Brown against Frederick W. Barker and others, as executors, etc., of A. Caldwell Belden, deceased, and others. From a judgment sustaining demurrers to the complaint, complainant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

William G. Tracy, for appellant.
William P. Goodelle, for respondents Barker et al.
L. C. Crouch, for respondent Alvin J. Belden.
W. A. Mackenzie, for respondent Lewis P. Smith, trustee, etc.

HISCOCK, J. This action was brought by the plaintiff, as a creditor of the defendant Alvin J. Belden, to reach the surplus income of a trust created for the latter's benefit and support. The precise ground upon which the demurrers were sustained was that the right to such surplus had vested in the defendant Smith as his trustee in bankruptcy, and that the plaintiff had no right to proceed against the same. It is alleged, amongst other things, in the plaintiff's complaint that he has a claim for $10,000 and interest against the defendant Belden as indorser of two notes; that the father of said defendant is dead, having left a last will and testament, whereby he created a trust fund the income of which in part is to be paid to said defendant during his life; that said income is more than sufficient for his support and maintenance, and is subject to an increase upon the death of his mother; that on or about February 27, 1900, said defendant Belden, together with his copartner, one Seely, filed a voluntary petition in bankruptcy, and shortly thereafter were duly adjudicated bankrupts, jointly and individually, and on or about April 1, 1900, the defendant Smith was duly appointed trustee in bankruptcy of said individuals and their estates, joint and individual, and duly qualified, and has since acted as such; that on or about November 26, 1900, the plaintiff commenced an action in the supreme court of the state of New York against said defendant Belden upon the indebtedness above mentioned, and an answer was served therein by him, and said action is now pending; that on or about December 18, 1900, "an order was made by the United States district court for the Northern district of New York, in the matter of said Alvin J. Belden, a bankrupt, restraining all further proceedings in said action * * * until the determination of the question whether said Alvin J. Belden should be discharged from his debts; that said order is in full force and effect, and by reason thereof the plaintiff in this action is restrained and prevented from recovering a judgment against said Alvin J. Belden therein, and procuring an execution to be issued thereon against the property of said Alvin J. Belden, and returned

unsatisfied, prior to the bringing of a creditors' action to reach the surplus of said trust fund," etc.; that said defendant Smith, as trustee in bankruptcy, claims to be entitled to said surplus income, and on or about December 10, 1900, brought an action in the supreme court to have the amount of the same ascertained and adjudged and applied to all of the debts of said Alvin J. Belden pro rata, which action is now pending in this court. This action was not commenced until on or after December 18, 1900.

Under the demurrers served, not only was the question raised that the plaintiff, as an individual creditor, cannot pursue the alleged surplus, and which was decided in favor of defendants, as above set forth, but it also was and is contended that plaintiff has not presented any sufficient excuse for not having recovered a judgment upon his indebtedness and having an execution returned unsatisfied, and that, therefore, he cannot maintain this action.

The first contention, that any right of action to reach any surplus income of the fund created for Mr. Belden's benefit has vested in his assignee, and does not reside in plaintiff, involves, largely and primarily at least, a consideration and construction of section 70 of the bankruptcy act, which defines certain property of a bankrupt which passes to his assignee in bankruptcy, and especially of subdivision 5 of said section. Said section provides that the following property shall pass to the assignee in bankruptcy: (1) Documents relating to the bankrupt's property; (2) interests in patents, patent rights, copyrights, and trade-marks; (3) powers which he might have exercised for his own benefit; (4) property transferred by him in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him; (6) rights of action arising upon contracts, or from the unlawful taking or detention of, or injury to, his property. It is strenuously insisted by plaintiff that the right of creditors to the surplus income in question could not have been transferred by the defendant, and could not have been levied upon and sold under judicial process against him, and that, therefore, it did not pass to his assignee.

In passing upon these conflicting claims, and the issues thereby raised, it is well for us to keep in mind that the three fundamental objects which the bankruptcy act was intended to secure and accomplish were: (1) That a debtor who had been unfortunate, and become unable to pay his debts, might be released therefrom, and be enabled to commence his business life anew, relieved of the burden, provided that he had not been guilty of fraudulent or other improper practices. (2) That, as the condition and price of being so released, he should turn over to his assignee, fully and unqualifiedly, all of his property which was subject to the demands of his creditors. (3) That this property should be applied equitably and ratably to the payment of his various debts, rather than that creditors should be allowed to pursue it for their own individual and diverse interests, with the result that one might secure payment in full of his claim and another get nothing. This object was emphasized in

the act by those provisions which, within certain limits, took away, even from the vigilant creditor, any advantage which he might have secured prior to the filing of the petition in bankruptcy. We may take judicial notice that the present bankruptcy act is the result of a long-continued agitation and discussion, and that it is our duty, if possible, to so construe its provisions, liberally if necessary, as to secure the objects for which it was created, rather than, by a narrow or technical construction, to defeat them.

The surplus income of this trust fund, if such surplus is established, is, beyond dispute, a species of property,—an asset,—which is liable to the claims of creditors. Section 78, Real Property Law. Such claims are not limited for their satisfaction to any surplus which may exist at a given date when proceedings are instituted, but their payment may be enforced out of the surplus arising in the future, as the income accrues and becomes payable. The right to such future surplus is not indefinite and uncertain, even though the surplus itself may be subject to the fluctuations and uncertainties of securities and of the continuance of the beneficiary's life. Williams v. Thorn, 70 N. Y. 270. It is not impossible to conceive of cases where, if the right to follow and secure for the benefit of creditors the surplus of such an income does not pass to the assignee in bankruptcy, it will be lost to creditors entirely, through the discharge of the bankrupt from his debts.

Having these considerations in mind, we feel willing to adopt the view very clearly and forcibly presented by the counsel for the trustee in bankruptcy herein, that any surplus of the income to which Mr. Belden is entitled should be held to have passed to his trustee under the first clause of subdivision 5 of section 70, referred to. We think that prior to the filing of his petition the bankrupt "could by any means have transferred" this surplus, within the meaning of this section.

It is urged that sections 80, 83, and 83a of the real property law of this state are antagonistic to and forbid this view. Those sections, in substance, provide that an express trust shall vest in the trustee the legal estate, subject only to the execution of the trust, and the beneficiary shall not take any legal estate or interest in the property; also that an express trust to receive rents and profits of real property, and apply them to the use of any person, cannot be transferred by assignment or otherwise; also that no person beneficially interested in a trust for the receipt of rents and profits of land can assign or in any manner dispose of such interest. All of these provisions of the statute are held to apply to trusts of personal as well as real property. Williams v. Thorn, 70 N. Y. 270, 273.

We are, however, to determine the meaning of these statutory provisions upon the question involved in the light of another one. Section 78 of the same statute provides:

"Where a trust is created to receive the rents and profits of real property and no valid direction for accumulation is given, the surplus of such rents and profits beyond the sum necessary for the education and support of the beneficiary shall be liable to the claims of his creditors in the same manner as other personal property which cannot be reached by execution."

We have it therefore resting upon positive statutory enactment as well as upon sound principles of justice that where a trust, such as the one in this case, is created for the benefit of a person, while the trust cannot be broken up or defeated by transfer or assignment of the beneficiary, still, if there is more income than is necessary to accomplish the object of the trust in providing for the beneficiary, such surplus is a species of property, and is liable to the demands of creditors. And we are called upon to decide the simple question whether a beneficiary and debtor may voluntarily transfer his right to such surplus to, or for the benefit of, his creditors, perhaps leaving the amount thereof still to be determined, or whether he is prohibited from so doing, and compelled to wait for and submit to the institution of hostile, and perhaps expensive, proceedings, which can beyond any doubt take away from him such surplus. We do not believe that there is any statutory provision or principle of law which requires the latter course. Certainly no case has been called to our attention which sustains such a doctrine. The authorities which have been cited by appellant's counsel upon the alleged nonalienability of or lack of power to reach the future income of such a trust have either been modified or overruled by later decisions, or are clearly distinguishable upon the facts involved from the case here presented. Neither is the view indicated, in our judgment, prohibited either by the letter or the spirit of the statutory provision urged upon our attention by appellant, that the beneficiary in such a trust takes no legal interest or estate in the trust property, and that he cannot dispose of his beneficial interest in the trust. A transfer such as we are discussing could not by any possibility be regarded as infringing upon the first provision. Neither does it amount to a transfer of the beneficiary's interest under and in the trust. That and his rights to enforce performance of the trust as an entirety continue. The debtor by his transfer would simply voluntarily consent to yield up such surplus portion of the proceeds thereof as under equally binding statutory provisions could be taken from him without his consent.

The spirit and intention of the statutes creating this manner of trust is to provide an income for the necessary and proper maintenance of a beneficiary beyond his power to dissipate the same. The mere statement of the purpose indicates its limitation to what is so necessary and proper for such purpose. Any surplus beyond such sum is not within the contemplation of the statutory design, and the latter is not nullified by its alienation. Such an assignment by such a beneficiary of such a surplus would still leave the trust income subject to the same safeguards as now. His act would not control his trustees, and fix the amount of the surplus, without their consent or without a judgment of the court to which they were parties. It would amount to a transfer of a right in the nature of an asset which his creditors could exact, the amount and value of which might still be subject to ascertainment.

And, further, assume that an action is commenced to reach and secure such surplus for the payment of debts, we see no reason to doubt that the defendant in such an action might, by offer or

confession, allow judgment to be taken for a surplus conceded, or to be determined upon proper proofs. This proceeding, by operation of law, would accomplish and amount to a transfer of property which, in our opinion, would easily come within a reasonable construction of the language of the section in question. But one case has been decided, so far as we are aware, passing upon the question above considered, whether the surplus income arising from a trust fund such as is involved here passes to an assignee in bankruptcy. In re Baudouine (D. C.) 96 Fed. 536. This case was reversed upon appeal upon another ground, but one of the judges sitting in the appellate court took occasion to express a concurrence in the views of the trial judge upon this question. That case, in holding that such surplus did pass to the assignee, proceeded upon somewhat different grounds than those adopted by us. It was, in substance, held that the provisions of section 70 of the bankruptcy act, describing certain property which should pass to the assignee, were not exclusive; that it was the apparent design of the bankruptcy act, as evidenced by other provisions and sections, to invest the assignee with all of the property of the debtor which was subject to the claims of his creditors; and that, therefore, even if it should be held that such a right of property or asset as we are considering here was not included within the literal terms of section 70, still, under all of the provisions of the entire act, it should be deemed to pass in bankruptcy. If we are right in the conclusions already expressed, it is unnecessary to pass upon this theory. If it were necessary, however, to prevent a failure of the scheme and purposes of the bankruptcy act, to concur in this view, we should be inclined so to do.

Still another reason is vigorously urged by counsel for the respondent Belden why plaintiff's complaint is demurrable, and why, therefore, the judgment should be affirmed. It is conceded that before he could maintain this action it was necessary for him to procure judgment against his debtor, and have execution returned unsatisfied, unless there was some adequate reason for not doing so. He did not do this, and the excuse given is found in those allegations of his complaint which recite that on the 26th day of November, 1900, he had commenced an action in the supreme court of the state of New York against the defendant Belden upon the indebtedness in question, and "on the 18th day of December, 1900, an order was made by the United States district court for the Northern district of New York, in the matter of said Alvin J. Belden, a bankrupt, restraining all further proceedings in said action in the supreme court brought by said plaintiff, said William M. Brown, until the determination of the question whether said Alvin J. Belden should be discharged from his debts; that said order is in full force and effect, and by reason thereof the plaintiff in this action is restrained and prevented from recovering a judgment against said Alvin J. Belden therein," etc.

Three points are made against the sufficiency of these allegations, and they are—First, that the United States district court had no authority or jurisdiction to make an order restraining said

action, and that it was absolutely void; and, secondly, that they do not state that said order was made against the will or consent of the plaintiff; and, thirdly, that they do not assert that plaintiff ever made any effort to have said order vacated or modified.

While the question, perhaps, is not free from doubt, we think that the allegations are insufficient. More or less was said upon the argument to the effect that said order was really made upon the application and consent of plaintiff. This we cannot, of course, consider. But before the commencement of this action the defendant Belden was entitled to have his indebtedness determined in an ordinary action at law, wherein he could enjoy his constitutional right of a jury trial, unless such course was clearly impossible to plaintiff. The courts are not inclined to extend the cases in which a plaintiff will be excused from pursuing the ordinary course of obtaining a judgment upon his indebtedness, and we think that it will not be going too far to hold that a plaintiff seeking to make such an excuse as is urged in this case shall clearly allege and show that the restraining order has been made against his opposition and without his procurement or consent. Further than this, the restraining order was apparently of a preliminary and temporary character. We are unable to find any provision which authorized the district court to restrain an action at law pending in the state courts against the bankrupt personally to determine the amount of the indebtedness. If there was no such provision, the order was without jurisdiction and void, and it is fair to assume that, if the plaintiff herein had made an application to have the injunction vacated or modified, the court would have listened to his application. We think that it was his duty to allege and show that he had made a reasonable effort to get rid of what appears to be a somewhat extraordinary and unusual order. Bank v. Wetmore, 124 N. Y. 241, 251, 26 N. E. 548; Shellington v. Howland, 53 N. Y. 371, 375; Glass Co. v. Vary, 152 N. Y. 121, 127, 46 N. E. 312. The interlocutory judgment appealed from should be affirmed, with costs.

Interlocutory judgment affirmed, with costs. All concur.